UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| E.B. RICH, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. CV 98-S-0130-S |
| USX CORPORATION AND UNITED STATES STEEL CORPORATION, | ) |
| Defendants. | ) |

FILED
98 MAR 16 PM 1:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 16 1998

## MEMORANDUM OPINION

Plaintiff E.B. Rich and defendant USX Corporation were jointly tried and convicted for violations of section 302 of the Taft-Hartley Act, 29 U.S.C. § 186. Rich is a former negotiator for the United Steelworkers of America who received pension benefits as kickbacks from USX, after making substantial concessions to USX during negotiations on behalf of his union. Rich alleges that agents of USX made false representations to him, both before and during the trial of the criminal proceeding, that altered his defense strategy and led to his conviction. Rich commenced this action against USX and its parent corporation, United States Steel Corporation, for damages arising from his alleged wrongful conviction.

Defendants move to dismiss Rich's complaint for failure to state a claim upon which relief may be granted, arguing (among other things) that Rich impermissibly seeks to collaterally attack his criminal conviction in a civil action.[1] Upon consideration of

---

[1] Also pending before this court is plaintiff's motion for limited discovery. Plaintiff asserts that such discovery is necessary to respond to defendant's alternative argument that this action is barred by the statute of limitations. (Plaintiff's motion for limited discovery at 3, 5.) This court

the pleadings, briefs, public records from prior criminal proceedings,[2] and oral arguments of counsel, this court finds that defendants' motion is due to be granted.

## I. STANDARD FOR REVIEWING 12(b)(6) MOTION

Under the liberal pleading requirements of the Federal Rules of Civil Procedure, plaintiff need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), *Fed. R. Civ. P.* For purposes of a motion to dismiss, the factual allegations in the complaint must be taken as true. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir. 1991), *cert. denied*, 502 U.S. 810, 112 S. Ct. 55, 116 L. Ed. 2d 32 (1991). Dismissal is appropriate only where it is clear that plaintiff can prove no set of facts in support of the claims in his complaint. *Powell v. United States*, 945 F.2d 374 (11th Cir. 1991). Accordingly, this court may dismiss a complaint, or a claim within a complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) only when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Executive*, 922 F.2d at 1539. *See also Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946).

---

does not reach the statute of limitations argument; therefore, plaintiff's motion is due to be denied.

[2]This court may consider matters of public record when ruling upon a motion to dismiss. *Papasan v. Allain*, 478 U.S. 265, 268 n.1, 106 S.Ct. 2932, 2935 n.1, 92 L.Ed.2d 209 (1986); *Nix v. Fulton Lodge No. 2 of the International Association of Machinists and Aerospace Workers*, 452 F.2d 794, 797-98 (5th Cir. 1971); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 299 (2d ed. 1990).

2

## II. UNDERLYING FACTS AND PROCEDURAL HISTORY

Rich and another union negotiator, Thermon Phillips, commenced negotiations with USX in September of 1983, attempting to reach an agreement concerning production at the USX steel mill in Fairfield, Alabama. At that time the steel market was depressed and many of USX's mills were idle, including the one in Fairfield. *United States v. Phillips*, 19 F.3d 1565, 1567 (11th Cir. 1994). USX was not willing to resume production at the Fairfield mill without permanent reductions in the labor force, elimination of "incentive" pay, and discontinuation of certain restrictive work practices. *Id.* Rich and Phillips were union employees at the time, but years earlier had been employed by USX.

> [A]t the time they began negotiating the local agreement for the locals at Fairfield in 1983, they had lost whatever right they may have had to receive a USX pension. Nonetheless, Phillips and Rich decided to condition the local agreement they were negotiating, and thus the resumption of production at Fairfield, on USX's willingness to award them enough "continuous service" to entitle them to immediately retire from USX's employment and receive a pension.

*Id.* at 1568. Rich and Phillips negotiated an agreement on December 24, 1983, under which USX would save over $24 million a year in labor costs. That agreement led to re-commencement of production at the Fairfield mill, whereas other mills which refused to make similar concessions were permanently closed. *Id.*

Thereafter, on October 22, 1984, USX's Executive Vice President for Employee Relations, J. Bruce Johnston, submitted a proposal to the company's Corporate Policy Committee, under the

3

terms of which USX's personnel manual would be revised in such a manner as to award pensions to Rich and Phillips. *Id.* at 1570-72. From December 1, 1984 until the middle of 1988, Rich received $48,318 in pension benefits. *Id.* at 1572.

Rich, USX, and Phillips were indicted on November 15, 1989. Count one of that indictment charged all defendants with conspiring to make and receive payments prohibited by the Taft-Hartley Act, 29 U.S.C. §§ 186(a)(4) and (b). *Id.* Count two charged Rich with receiving payments in violation of § 186(a)(1). *Id.* The case went to trial on March 5, 1990, and a jury convicted Rich under counts one and two on July 1, 1990.[3] The Eleventh Circuit affirmed Rich's conviction (*id.* at 1584), and his petition for writ of *certiorari* to the United States Supreme Court was denied. *Phillips v. United States*, 514 U.S. 1003, 115 S.Ct. 1312, 131 L.Ed.2d 194 (1995).

Rich now argues that J. Bruce Johnston subsequently provided evidence establishing his innocence. Johnston also was charged with violations of the Taft-Hartley Act in 1990, but he was not tried with the other defendants. Consequently, he invoked his Fifth Amendment privilege against self-incrimination and refused to testify at Rich's criminal trial. The charges against Johnston were resolved on November 19, 1995, when he pled guilty to a misdemeanor.

Johnston thereafter contacted Rich's counsel, and provided an affidavit averring that: revision of the leave of absence and

---

[3] Rich was found not guilty of ten charges of mail fraud, but USX was convicted of those charges.

4

pension policy was an issue between USX and the United Steelworkers of America long before the Fairfield negotiations (Johnston affidavit at 2-3); corporate meetings in the Fall of 1983, unrelated to the Fairfield negotiations, discussed changes to the pension policy (*id.* at 4-5); Rich and Miller were uninvolved in USX's decision to change the policy (*id.* at 3); and, the change in the pension policy was approved by USX's legal department. (*Id.* at 6-7.)

Even so, Rich was aware of the substance of Johnston's testimony before receiving his affidavit. He filed a motion for a new criminal trial on May 2, 1995, based on "newly discovered evidence." (Defendants' exhibit 6 at 1.)

> Some three months after the trial of Defendant Rich, Johnston filed a pre-trial memorandum in his criminal case which set out the contents of some of his conversations with [USX attorney James T.] Carney and the extent of Carneys [sic] participation in the negotiations and policy change. (Exhibit "B") This was the first opportunity for the USX defendants to learn what the testimony of Johnston would have been and what advice Carney had given Johnston.
>
> . . .
>
> There is a reasonable probability the result would have been different had the jury been made aware:
>
> a. That Johnston had been considering a company-wide change in the leave policy and discussing it with other companies as well as the USX legal department years before the Fairfield negotiations of 1983.
>
> b. That the decision to change the policy was a unilateral decision by USX and was not made to influence the actions of Rich and Phillips.
>
> c. That Johnston directed [USX Vice President for Labor Relations William] Miller to make it clear that the

5

>   leave of absence issue was not a part of the Fairfield
>   negotiations and must be raised by the International
>   Union.
>
>        d.  That Johnston [sic] recommendation to change the
>   policy was made at a time he believed to be uniquely
>   appropriate to bring USX policy closer to industry
>   practice.
>
>        e.  That the actions by Johnston were based on the
>   advice of the USX legal department, specifically James
>   Carney and Dominic King.
>
>   . . .
>
>        Clearly, had the jury been provided with the
>   testimony of Johnston and Carney, and had the corporate
>   defendant, USX, not invoked the attorney-client
>   privilege, thus preventing information necessary to the
>   defense of the individual defendants, the jury would have
>   found reasonable doubt to conclude that the granting of
>   pensions to the individual defendants was done for the
>   purpose of influencing the actions of the defendants.

(*Id.* at 4, 13-14, 18 (emphasis in original).)  The court denied

Rich's motion for a new trial on November 22, 1995, stating:

>   It is indeed almost ludicrous for this Defendant to claim
>   that this "newly discovered" evidence would prove his
>   innocence of the felonies charged in Counts One and Two
>   of the Indictment in view of applicable law and the
>   overwhelming evidence in the trial record which
>   establishes his undeniable guilt beyond a reasonable
>   doubt under both Counts One and Two.

(Defendants' exhibit 13 at 38.)

Rich filed a motion for reconsideration on November 30, 1995, attaching the affidavit of J. Bruce Johnston. (Defendants' exhibit 14.) The district court denied that motion on December 26, 1995. (Defendants' exhibit 17.) Rich appealed the denial of those motions, but the Eleventh Circuit affirmed the district court on October 25, 1996. (Defendants' exhibit 19.)

## III. PLAINTIFF'S CIVIL ACTION

E.B. Rich currently is incarcerated in Maxwell Federal Penitentiary in Montgomery, Alabama. Therefore, he filed this civil action in the Middle District of Alabama. Defendants filed a motion for change of venue contemporaneously with their motion to dismiss on November 4, 1997. The motion for change of venue was granted on January 16, 1998, and the action was transferred to this court on February 6, 1998.

The basis of Rich's current claim is summarized within four paragraphs of his complaint:

> Prior to November of 1995, Rich was unaware there had been complete reliance by Johnston and others upon the legal advice of USX's law department, and that Rich and his co-negotiator were not in any way responsible for the actions taken by USX in the Fairfield negotiations, resulting in the charges that lead to the conviction and incarceration of E.B. Rich.
>
> Prior to November of 1995, Rich was unaware that USX, through its counsel, officers, and agents, including but not limited to representatives of USX's law department, had embarked upon a deliberate strategy to protect the agents and employees of USX who had not been indicted, including, but not limited to, the general counsel of USX. USX's strategy involved making certain misrepresentations to Rich and his counsel concerning the information contained within the files of USX and known by witnesses who were employees of USX.
>
> Had Rich been provided with the truthful testimony of Johnston and James T. Carney (USX attorney) and others and the information shielded from Rich by USX's assertion of the attorney-client privilege, Rich would not have been convicted, incarcerated and lost his employment and reputation.
>
> . . .

7

E.B. Rich has suffered damages as a direct and proximate result of the actions of Defendant USX, King and Carney, including, but not limited to, imprisonment for crimes of which he is innocent, loss of employment, mental and physical distress and suffering, damage to his personal and business reputation, the expenditure of monies, the loss of pension benefits, the loss of income, and the loss of the companionship of his family and friends.

(Complaint at 5-6.)

## IV. DISCUSSION

The present civil action is an impermissible attempt by E.B. Rich to collaterally attack his criminal conviction. The Supreme Court has held that a plaintiff seeking to recover damages for

> harm caused by actions whose unlawfulness would render a conviction or sentence invalid ... must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 283 (1994). The Court instructed district courts to

> consider whether a judgment in favor of plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487, 114 S.Ct. at 2372.

Rich claims that, absent the alleged conduct of USX, he "would not have been convicted, incarcerated and lost his employment and reputation." (Complaint at 6.) Thus, he seeks a civil judgment which necessarily would imply the invalidity of his conviction.

8

Rich cannot demonstrate that his conviction or sentence has already been invalidated, however. Indeed, the district court has refused to grant a new trial based upon the same evidence presented to this court; the Eleventh Circuit has twice affirmed his conviction; and, the United States Supreme Court has declined to review the conviction.

Rich attempts to distinguish *Heck* by arguing that its holding applies only to plaintiffs who sue state prosecutors under 42 U.S.C. § 1983. The rationale of *Heck* was not derived from the unique body of law surrounding § 1983 claims, however. Rather, the Court found that

> the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id.* at 486, 114 S.Ct. at 2372. Indeed, the Eleventh Circuit has recognized that the *Heck* "Court's purpose was to limit the opportunities for collateral attacks on state court convictions because such collateral attacks undermine the finality of criminal proceedings and may create conflicting resolution of issues." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995)(applying *Heck* to *Bivens* actions).[4] That rationale is equally applicable in the

---

[4] See also *Elliott v. Securities and Exchange Commission*, 36 F.3d 86 (11th Cir. 1994), where the plaintiff was convicted of mail and securities fraud. Subsequently, he was barred by the Securities and Exchange Commission from associating with any securities broker or dealer. He appealed that bar to the Eleventh Circuit, claiming, in part, that his conviction was invalid. The Eleventh Circuit, however, refused to "entertain the collateral attack on the criminal conviction." *Id.* at 87.

9

present action: any civil judgment in favor of Rich in the present action would undermine the finality of the prior criminal proceedings and create conflicts in issues resolved therein.

This court thus finds that the present action is an impermissible attempt by E.B. Rich to collaterally attack his criminal conviction, and his complaint accordingly is due to be dismissed. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 16th day of March 1998.

_____
United States District Judge

10